UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| T-MOBILE NORTHEAST LLC, f/k/a Omnipoint Communications, Inc.,<br><br>Plaintiff,<br><br>- against-<br><br>TWO EAST NINETY EIGHTH STREET CO., INC.,<br><br>Defendant. | Case No.: 11-CIV-3617 |

# PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION

PORZIO, BROMBERG & NEWMAN, P.C.
156 WEST 56TH STREET, SUITE 803
NEW YORK, NY 10019
212-265-6888
*ATTORNEYS FOR PLAINTIFF*
*T-MOBILE NORTHEAST, LLC*

1559451

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................ 1

    A PRELIMINARY INJUNCTION IS WARRANTED ..................................................... 1

        A.    T-Mobile Paid The Option Fee Within A "Reasonable Time"............................... 2

        B.    Two East Cannot Deny T-Mobile Its Right To Exercise The Option ................... 5

        C.    T-Mobile will be Irreparably Harmed Absent an Injunction ................................. 7

        D.    At minimum, the Court should Consolidate the Motion with the Trial and Permit Expedited Discovery ................................................................................. 8

CONCLUSION ......................................................................................................................... 9

# TABLE OF AUTHORITIES

## CASES

Page(s)

Branti v. Finkel, 445 U.S. 507 (1980) .................................................................................9

MAM Properties, LLC v. Omnipoint Communications, Inc., 2010 Slip Op 20467 at 2-3
   (App Term 2010) ..........................................................................................................4, 5

Norris v. Penguin Group (USA), Inc., 2008 U.S. Dist. LEXIS 23442 (S.D.N.Y. 2008) .................9

O.D.F. Optonics Ltd.v. Reminsgton Arms Co., Inc., 2008 U.S. Dist. LEXIS 74482
   (S.D.N.Y. 2008) ..................................................................................................................8

Parker v. Booker, 33 A.D.3d 602, 822 N.Y.S.2d 156 (2d Dep't 2006) ...............................2, 3, 4

Realty Corp. v. Boehm, 204 A.D.2d 620, 612 N.Y.S.2d 207 (2d Dep't 1994) ........................2, 6

Reuters Ltd. V. United Press Int'l, Inc., 903 F.2d 904 ..............................................................8

## RULES

Fed. R. Civ. Pro 65(a)(2) .............................................................................................................9

1557763

## PRELIMINARY STATEMENT

In opposition to T-Mobile's motion for a preliminary injunction, the defendant Two East Ninety Eighth Street Co. argues that T-Mobile cannot succeed on the merits of its case because it did not "strictly adhere" to the terms of the parties' agreement. Two East's argument is incorrect because a strict reading of the lease with option agreement favors T-Mobile. Indeed, there is nothing in the agreement that permits Two East to reject the correct option fee, which was tendered within the option period, simply because T-Mobile initially tendered an incorrect fee, which Two East sat on for six months. The ultimate question of reasonableness regarding the parties' dealings with each other likewise strongly favors T-Mobile.

Two East also argues that there is no showing of irreparable harm, even though T-Mobile, a well known telecommunications carrier, is undisputedly unable to remedy the coverage gap that now exists and is needlessly impeding wireless communications in and around the subject site at Fifth Avenue and 98th Street. This is a classic case of irreparable harm because monetary damages are not adequate to address the needless dropped calls, customer dissatisfaction, and interference with efficient and continuous wireless communications in and around the subject site.

## ARGUMENT

### A PRELIMINARY INJUNCTION IS WARRANTED

Two East contends that "by failing to tender the $500 option fee when it sought to exercise the option, T-Mobile has failed to "strictly adhere" to the terms of the option, and the Landlord may rescind the Lease." (Memo in Opp., p. 7). Two East has misstated the facts. T-Mobile has tried to *purchase* the option under the lease agreement, but has not yet *exercised* it because Two East has denied T-Mobile access to the Premises, thereby preventing T-Mobile

1

from preparing its final construction plans and commencing payment of rent (which begins once the option is fully exercised). In any event, T-Mobile *has* strictly adhered to the terms of the parties' agreement by tendering the $500 Option Fee well within the Option Period, as nothing in the lease prescribes when it must be paid. As soon as the mistaken payment of only $100 was brought to T-Mobile's attention, the correct $500 payment was tendered in early January 2011. The correct payment was made within a reasonable time, and any delay, which has been caused by Two East, has caused no prejudice whatsoever to Two East.

### A.   T-Mobile Paid The Option Fee Within A "Reasonable Time"

There is no dispute that the parties' lease with option agreement is silent on when exactly the $500 Option Fee must be paid. When an option agreement does not require performance on or by a specific date, "the law will imply a reasonable date." Parker v. Booker, 33 A.D.3d 602, 822 N.Y.S.2d 156 (2d Dep't 2006); Realty Corp. v. Boehm, 204 A.D.2d 620, 621, 612 N.Y.S.2d 207 (2d Dep't 1994) (when option agreement does not specify a performance date, parties are given a "reasonable time to tender performance"). "What constitutes a reasonable time for performance depends upon the facts and circumstances of the particular case." Parker v. Booker, 33 A.D.3d at 603.

Here, T-Mobile first tendered the incorrect Option Fee less than 30-days after the "Effective Date" of the agreement, but issued its replacement check for the correct amount six months later in January 2011, immediately after learning that it had tendered the wrong amount. T-Mobile would have corrected its inadvertent error much sooner had Two East not deliberately waited six months and sat on the $100 check before notifying T-Mobile of the mistake. Even with Two East's delay, however, T-Mobile paid the correct Option Fee almost five months before the one-year Option Period expired on June 3, 2011. Considering that the Option Period

1557763

began to run on the same date the agreement became "effective," there is no rational basis to conclude that tendering the Option Fee (a) within the Option Period, (b) before T-Mobile exercised the option, (c) before T-Mobile began paying rent, and (d) before T-Mobile commenced any construction of the wireless facility was in any way unreasonable. Two East has not provided this Court with a scintilla of evidence to support its inexplicable 180-degree about face in rejecting the correct option fee. Nor has it explained, factually or legally, why it was reasonable for T-Mobile to pay the Option Fee within 30 days of the Effective Date, but not six months later, immediately upon learning of its payment error. Notably, Two East does not refute that its conduct is motivated, as alleged in the complaint, by the irrational fears of selected occupants concerning safety of a wireless facility. These sites are ubiquitous and allow the public to enjoy wireless communications by voice and data exchanges countless times daily. The only appropriate inference here is that Two East is trying to exploit what is undisputedly an innocent and *de minimis* payment error.

Significantly, during the six months between T-Mobile's incorrect and correct Option Fee payments, T-Mobile had numerous discussions with Two East about the details for the Antenna Facility installation. (See accompanying Reply Declaration of Robert Ciaglia ["Ciaglia Decl."] at ¶¶ 22-24). During the many communications in person and by electronic mail, not once did Two East, or anyone on its behalf, mention the Option Fee error. It was only in late December after counsel became involved that Two East raised the issue.

The cases that Two East relies upon do not support its argument that it can unilaterally rescind the agreement. In Parker v. Booker, 33 A.D.3d at 602, the parties' agreement gave the optionee a four-year option period to purchase the defendant's land, but required that optionee pay the property taxes during the option period. When the optionee failed to pay any of the

3

1557763

property taxes for two years and seven months, the defendant rescinded the option and listed the land for sale. Id. at 603. The court held that, while the agreement did not specify a date by which the optionee should pay the taxes, a "reasonable time" had elapsed because "real property taxes by their nature are due on a particular day, [and] the reasonable date on which they were required to be paid is the date on which they were due." Id. The facts and circumstances in this case are readily distinguishable from those in Parker.

MAM Properties, LLC v. Omnipoint Communications, Inc., 2010 Slip Op 20467 at * 2-3 (App Term 2010), also relied upon by Two East, is a case that was tried and argued by the undersigned. There, Omnipoint stopped payment on a check for the $500 option fee because it mistakenly named the wrong payee, and corrected the error after the wireless facility was built months later. The landlord argued that Omnipoint's payment was late and that it had to have been made before construction started, even though the option agreement was silent on when the option fee had to be made. After hearing all of the evidence, the trial court properly held that because the parties' agreement did not specify when the option fee had to be paid, it was reasonable under all of the facts and circumstances for Omnipoint to pay the option fee after the facility was built (and within the option period).[1] Based upon that legal conclusion grounded under contract law, the trial court awarded Omnipoint its legal fees in accordance with the agreement's prevailing party clause. (A copy of the trial court's decision is attached as Ex. 1 to the accompanying declaration of Gary M. Fellner dated June 15, 2011).

On appeal, the Appellate Term disallowed the legal fee award by invoking its equitable powers to do what it perceived as fair under the circumstances. That is, it allowed the site to remain at the property in Omnipoint's favor but did not uphold the legal fee award. However, it

---

[1] Similar to here, in MAM the landlord failed to alert Omnipoint that the replacement option fee was never received after the first check had been stopped.

4

never held that Omnipoint failed to adhere to the option agreement by paying the option fee after the work started, or that rescission was warranted under the facts. Rather, the Appellate Term ruled as follows:

> While [Omnipoint] **may have** failed to comply with the terms of the option contract ... under the circumstances presented equity will intervene to prevent a substantial forfeiture and will not permit petitioner to assert ... that [Omnipoint] has failed to exercise the lease option because it had not paid the option fee in the six months prior to construction and to demand that [Omnipoint] remove its equipment and surrender possession.

Id. at *4-5. (emphasis added)  By allowing equity to intervene, the Appellate Term held that an award of legal fees otherwise authorized under the lease was not warranted. In short, the Appellate Court chose to sidestep the legal issue squarely addressed below and invoke its equitable powers to disallow legal fees to Omnipoint.

The facts here do not address a situation where the option fee was tendered after construction of the cell site. Nor do the facts here require that equity intervene. The legal issue addressed by the trial court in MAM Properties, but which was skirted by the Appellate Term, is thus squarely before this court:  May a landowner unilaterally declare an option contract contained in a wireless telecommunications equipment lease "null and void," for no reason other than optionee's failure to tender the correct option fee within 30 days of the agreement being effective, even though the agreement contains no such time requirement. The answer is "no." Because the lease does not require payment of the option fee within any set time frame, Two East had no legal or equitable ground to unilaterally reject the correct fee that T-Mobile tendered months before the Option Period expired.

### B.  Two East Cannot Deny T-Mobile Its Right To Exercise The Option

Two East's argument should also be rejected because even if the mistaken $100 payment gave rise to a material contractual default (which is not the case in view of the agreement's

5

language), Two East's position is based on a *de minimis* default of an option agreement. New York courts have held that an optionor cannot deny an optionee's right to exercise an option where the optionor fails to notify optionee of its alleged defaults under the option agreement; the alleged defaults are *de minimis;* and enforcement of the option would not prejudice the optioner. For instance, in Realty Corp. v. Boehm, 204 A.D.2d 620, 612 N.Y.S.2d 207 (2d Dep't 1994), the court wrote:

> The Supreme Court properly determined that the defendant failed to give proper notice of the plaintiffs' alleged defaults in complying with the notice provision of the option agreement. The defendant, therefore, cannot use the plaintiffs' alleged defaults to vitiate the plaintiffs' right to exercise the option. We note that many of the alleged defaults were *de minimis* and that the defendant failed to demonstrate any prejudice which would stem from the enforcement of the option. Moreover, the plaintiffs presented evidence of large expenditures on the property in anticipation of their exercise of the option.

204 A.D.2d at 621-22 (citations omitted).[2]

Two East deliberately waited six months to notify T-Mobile of its *de minimis* payment error and is relying upon that six-month delay to unilaterally rescind the parties' agreement after T-Mobile has spent significant time and money to acquire this site and prepare for installation. (Ciaglia Decl., ¶¶ 23-24). There is no other site available that will serve the need filled by this agreement unique to this property, location, building configuration, and proximity to nearby cell sites.

By contrast, Two East has not demonstrated that enforcing the option agreement will prejudice it in any way. The only prejudice it claims is that it will "be forced to go through unnecessary hardship as the building will be forced to admit T-Mobile to undertake structural tests and the Board would have to spend time considering Plans submitted by T-Mobile." (See Memo in Opp. at p. 19-20). As a matter of law, that is not prejudice. Two East expressly agreed

---

[2] Two East ignores ¶ 9 of the lease, which allows one party, on default of the other party, to cure any default upon 30 days notice. See lease at p. 3, ¶ 9. Such ability to cure was never given by Two East.

6

to the terms of the agreement in May 2010.  Moreover, it is hard to fathom how it would be a "hardship" for Two East to do what thousands of other landowners do in the New York metropolitan area- receive rent on a monthly basis from a reputable wireless carrier in exchange for housing some wireless communication equipment on a roof top that in turn greatly benefits the public, emergency 911 personnel, and T-Mobile's customers, all of which is consistent with federal policy as set forth in the Telecommunications Act of 1996. (See T-Mobile's Opening Mem. at 11-12)

### C. T-Mobile will be Irreparably Harmed Absent an Injunction

As explained in the accompanying reply declaration of Robert Ciaglia, T-Mobile has not lodged speculative or "vague" allegations on the issue of irreparable harm, as Two East asserts in opposition.  Loss of customers through "churning" has and will continue to result due to the deficient coverage gap that exists in and around this site. (Ciaglia Decl., ¶ 12). The Ciaglia declaration also shows that T-Mobile's currently operational neighboring "cell sites" are being forced to cover for this site being "off air" and are thus performing at poor levels. (Id. at ¶ 14). In other words, neighboring cell sites are being overloaded with wireless traffic, and as a result, wireless customers in the several block radius are experiencing high volumes of dropped calls and degraded service. This is fully supported by T-Mobile's data, which is attached to Mr. Ciaglia's Reply Declaration.

These very real telecommunications issues will only be remedied by the injunctive relief sought. No other remedy suffices. T-Mobile had expected this site to be operational last year, and it is only because of Two East's persistent requests for additional information that this issue persists.  By analogy, a stretch of highway that remains unlit will inevitably result in needless accidents.  The only proper remedy is to install appropriate equipment.  So too here, the inability

to operate T-Mobile's wireless equipment at this specific site, which was selected as a necessary replacement for a nearby cell site that has been off air since 2010, will continue to plague T-Mobile's customers with needless dropped calls and degraded service in and around this vicinity, including in and around Mt. Sinai Medical Center. That is irreparable harm. See e.g., O.D.F. Optonics Ltd.v. Reminsgton Arms Co., Inc., 2008 U.S. Dist LEXIS 74482 (S.D.N.Y. 2008) (citing Reuters Ltd. V. United Press Int'l, Inc., 903 F.2d 904, 907-08 ((2d Cir. 1990) (irreparable harm to a distributor has been found where its supplier stopped providing it with the unique good that it distributed to its customers and the fact that customers "expect and rely on the distributor for a continuous supply of that product almost inevitably creates irreparable damage to the good will of the distributor.") There is no valid reason to allow T-Mobile's customers and the public that rely on ubiquitous wireless service for their daily lives to continue to bear Two East's recalcitrance.

Further, T-Mobile has already expended over $60,000 in site acquisition costs, excluding time spent by personnel to address Two East's questions at this site. (Ciaglia Decl., ¶ 24).

### D. At minimum, the Court should Consolidate the Motion with the Trial and Permit Expedited Discovery

As explained above, the lease with option agreement does not require that the lease be frustrated and declared null and void, as Two East maintains in this litigation, simply because the correct option fee of $500 was not tendered immediately after lease execution. As a matter of law, therefore, a preliminary injunction should issue, because the correct fee of $500 was tendered within a reasonable period, and certainly right after the mistake was brought to T-Mobile's attention. There is no evidence or argument offered by Two East to show that payment was unreasonably delayed or caused Two East any prejudice.

Alternatively, if the Court finds that there are questions of fact as to whether the option fee was tendered after a "reasonable" period following lease execution, then a hearing on that issue, including why Two East did nothing with the $100 fee for six months and now is trying to renege on the agreement. And since those issues will be dispositive of both the pending motion and the complaint's allegations, the court may order the motion hearing consolidated with the trial as authorized under Fed. R. Civ. Pro 65(a)(2) and permit the parties to engage in expedited discovery to discover facts bearing on those factual matters. Branti v. Finkel, 445 U.S. 507 (1980); Norris v. Penguin Group (USA), Inc., 2008 U.S. Dist. LEXIS 23442 (S.D.N.Y. 2008) (Sweet, J.).

## CONCLUSION

The Court should issue the injunctive relief requested, or at minimum, order expedited discovery so that the issues in the complaint and motion can be consolidated for trial as authorized pursuant to Fed. R. Civ. Pro 65(a)(2).

Dated: New York, New York
       June 15, 2011

PORZIO, BROMBERG & NEWMAN, P.C.

By: _____
Gary M. Fellner
Joshua H. Abramson, Esq.
156 West 56th Street, Suite 803
New York, New York 10019-3800
Tel: (212) 265-6888
*Attorneys for Plaintiff, T-Mobile Northeast LLC, f/k/a Omnipoint Communications, Inc*

9

1557763